U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB 22 2013

TONY R. MOORE, CLERK
BY DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

RONALD SMITH, SR.

versus

CLECO CORPORATION

CIVIL ACTION NO. 11-1706
JUDGE TOM STAGG

---

## MEMORANDUM RULING

Before the court is the second motion for summary judgment filed by the defendant, Cleco Corporation ("Cleco"), seeking dismissal of all remaining claims alleged by the plaintiff, Ronald Smith, Sr. ("Smith"). See Record Document 122. Based on the following, Cleco's second motion for summary judgment is **GRANTED.**

## I. BACKGROUND[1]

Smith began his employment at Cleco in 2000 as a Credit Collection Supervisor. Two years later, he was promoted to the position of Manager of Customer Revenue Quality Assurance, which was later changed in name only to Director - Customer Revenue Quality Assurance. See Record Document 122, Ex. A

---

[1]Much of the background is adopted from the court's previous summary judgment ruling. See Record Document 113.

at 6, 7, 21. Smith, along with twelve other current and former African-American employees of Cleco, brought an action against Cleco, alleging, inter alia, race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, Section 1981 of the United States Code, the Louisiana Employment Discrimination Law, and the Louisiana Commission on Human Rights. See Record Documents 1, 5 and 25. The court ruled on Cleco's first motions for summary judgment as to the plaintiffs, and the remaining causes of action were severed. See Record Document 115. Regarding the first motion for summary judgment as to the claims of Smith, the court dismissed his Title VII claims, state law claims, and Age Discrimination in Employment Act ("ADEA") claims. See Record Document 114. The court now addresses Smith's remaining claims of failure to promote, discrimination, retaliation, and hostile work environment brought pursuant to 42 U.S.C. § 1981.

## II. ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v. Health

[2]The court notes that amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B. Failure To Promote.**

Smith asserts several failure to promote claims in his complaint and first supplemental complaint but fails to defend them in his opposition to Cleco's motion for summary judgment. See Record Documents 1 at 20-25 and 5 at 20-25. Instead,

he asserts, what appears to be, a new failure to promote claim based upon a general manager position that was filled in 2005. See Record Document 130, Memorandum in Opposition at 3. As a result, Smith has effectively abandoned his other failure to promote claims.[3] See Milton v. Boise Cascade, L.L.C., 2011 WL 285091 at *5 (W.D. La. Jan. 25, 2011); see also Keenan v. Tejeda, 290 F.3d 252, 262-63 (5th Cir. 2002). Cleco argues that Smith's newly asserted failure to promote claim has prescribed and is, otherwise, without merit.

Section 1981 does not contain a statute of limitations. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839 (2004). When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations." Id. Under Louisiana law, "[a] section 1981 claim is best characterized as a tort . . . and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by [Louisiana Civil Code article] 3492." Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985). However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations. See 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of

---

[3]Regardless of Smith's abandonment of his other failure to promote claims, the court finds that these claims have prescribed under 28 U.S.C. § 1658 and Louisiana's one-year prescriptive period for delictual actions.

Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989). Section 1981 "did not protect against harassing conduct that occurred after the formation of the contract." Jones, 541 U.S. at 372, 124 S. Ct. at 1840 (citing Patterson, 491 U.S. 164, 109 S. Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. See id. Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section 1981 or is only made possible by the 1991 amendments. See id. at 382, 124 S. Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one year. See id. at 371, 124 S. Ct. at 1839; Taylor, 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. See Jones, 541 U.S. at 382, 124 S. Ct.

at 1845.

Failure to promote claims were actionable under section 1981, prior to the 1991 amendments, if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." Patterson, 491 U.S. at 185, 109 S. Ct. at 2377. As the Supreme Court explained in Patterson, "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under [section] 1981." Id. "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." Police Assoc. of New Orleans v. City of New Orleans, 100 F.3d 1159, 1170-71 (5th Cir. 1996). If the new position involves "substantial changes," the failure to promote claim was available under section 1981 prior to the 1991 amendments and Louisiana's one-year prescriptive period applies. See id.; see also Fonteneaux v. Shell Oil Co., 289 F. App'x 695, 699 (5th Cir. 2008). Otherwise, the claim is only available under section 1981 as amended and the four-year statute of limitations applies. See id.

Smith alleges that the facts giving rise to his failure to promote claim arose in early 2005. According to Smith, he emailed Anthony Bunting ("Bunting"), the hiring manager, to express his interest in an open general manager position. Bunting did not

respond to Smith's email and hired Kim Fontenot to fill the position. See Record Document 122, Ex. B at 37-39. The parties are unsure of the exact date that the position was filled, but Smith states in his second deposition that this occurred in January of 2005. See id.

Smith asserts that his failure to promote claim is subject to the four-year statute of limitations because his claim arose under the 1991 amendments. Even if this is true, his claim is still untimely. Smith filed his complaint on December 11, 2009, more than four years after the limitations period began running in January of 2005. See Record Document 1. He argues, however, that he interrupted the running of the statute of limitations by filing a charge with the Equal Employment Opportunity Commission ("EEOC") on January 8, 2005, alleging that he was denied promotions to five general manager positions and by filing a complaint of discrimination with the Office of Federal Contract Compliance Programs ("OFCCP") on June 17, 2005. According to Smith, these complaints were resolved in 2006 and 2007, respectively.

Smith provides no legal basis for his tolling argument. The United States Supreme Court in Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 465-66, 95 S. Ct. 1716, 1722-23 (1975) held that the filing of an EEOC charge alleging violations of Title VII does not toll the statute of limitations for a section 1981 claim. Therefore, Smith's failure to promote claim arising out of the 2005 general manager

position has prescribed.

### C. Retaliation And Miscellaneous Discrimination Claims.

Smith claims in his opposition that Cleco retaliated against him for filing complaints with the EEOC and the OFCCP for Cleco's promotional practices. For cases of discrimination and retaliation based on circumstantial evidence, the court applies the McDonnell Douglas burden-shifting analysis.[4] See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

> To survive summary judgment under McDonnell Douglas, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for discrimination.[[5]]

---

[4] "An employee can prove discrimination [or retaliation] through direct or circumstantial evidence." Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005). Smith does not allege that he possesses direct evidence in support of his retaliation claims, nor does the court find any in the record.

[5] "[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false." Crawford v. Formosa Plastics Corp., 234 F.3d 899, 903 (5th Cir. 2000) (citations and quotations omitted).

Davis, 383 F.3d at 317 (citations omitted). To establish a prima facie case of retaliation, a plaintiff must demonstrate that: 1) he engaged in a protected activity; 2) an adverse employment action occurred; and 3) a causal link exists between the protected activity and the adverse employment action. See McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). Cleco argues that Smith's claims lack the requisite causal link because Smith's allegations either occurred before the protected activity in question or occurred several years afterward. Cleco further argues that none of Smith's numerous allegations are adverse employment actions. In his opposition, Smith does not directly address any of the points made by Cleco but instead alleges several miscellaneous retaliatory actions and restates the factual allegations in his complaint. The following is the entirety of Smith's argument with respect to his retaliation claims:

> After Mr. Smith complained, Ed Taylor had him removed from the company's succession plan. Cleco launched an unwarranted investigation of Mr. Smith['s] Expenses. Mr. Smith was told that white employees, who had turned in less were never bothered. When Mr. Smith sent a simple email to the CFO he was confronted by Ed Taylor and told it was inappropriate. Neal Chadwick approached Mr. Smith in February of 2005 to intimidate him and retaliate against him for [] taking a vocal position against how African-Americans were being treated at Cleco. Ed Taylor launched an investigation of Mr. Smith['s] personal life, approaching a co-worker and asking her if she was having an affair with Mr. Smith. A white manager went to Mr.

> Smith['s] team members behind his back to investigate whether he was a part of the "black mafia."
>
> The individual at the center of all these events was Ed, who sat at the center of power in HR, who was out to get Smith, because he complained about the lack of promotional opportunities.

See Record Document 130, Memorandum in Opposition at 9.

Each of Smith's claims based upon these allegations fails because Smith cannot establish a causal link between them and his protected activities. Smith filed his EEOC charge in June of 2005 and filed his OFCCP complaint "several months after." See Record Document 122, Exs. A at 27-29, 40 and G at 4. All of Smith's allegations, except for one, occurred before he filed his EEOC charge. The alleged "black mafia" investigation occurred in 2002 and at the latest in early 2003. See id., Exs. A at 8-11 and B at 7-9. His removal from the succession plan occurred in 2003 or 2004.[6] See id., Ex. A at 11-17. Cleco conducted an audit on his business expenses in late 2003. See id., Ex. A at 18-20. Neal Chadwick approached Smith and allegedly intimidated him in a company parking lot in February of 2005. See id., Ex. A at 29, 30. In 2003 or 2004, Ed Taylor ("Taylor") told Smith that his email to the Chief Financial Officer was inappropriate. See id., Ex. A at 11, 12. Since these

[6]According to Smith, the succession plan's purpose was designed to identify employees who would potentially be selected for upper management positions within Cleco. See Record Document 122, Ex. A at 13.

alleged adverse employment actions occurred before Smith filed his EEOC and OFCCP complaints, the claim that they were done in retaliation against Smith's protected activities is impossible. Moreover, each of these claims, whether construed as retaliation or discrimination claims, has prescribed under the four-year statute of limitations.

Only one of Smith's alleged adverse employment actions occurred after he filed the EEOC complaint. Taylor's investigation into whether a co-worker was having an affair with Smith occurred in October of 2008. See id., Ex. A at 42-45. Smith offers no evidence to establish a causal connection between these two events other than conclusory allegations and the fact that the adverse employment action occurred after the protected activity. The Fifth Circuit has recognized that "[t]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case." Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002). The court in Raggs held that a five month time period between the protected activity and the adverse employment action was insufficient to establish a causal connection. Here, the time period between the EEOC and OFCCP complaints and the investigation was approximately three years.

The sole fact that the adverse employment action occurred after the protected activity is insufficient to establish a causal connection in this case.[7]

For these reasons, all of Smith's retaliation claims are dismissed. Furthermore, any retaliation claims or discrimination claims not addressed above are also dismissed for Smith's failure to address them in his opposition to Cleco's motion for summary judgment. By failing to even mention these claims, Smith effectively abandoned them and failed to meet his burden at summary judgment by not establishing a prima facie case for those claims.

**D. Hostile Work Environment.**

In order to establish a hostile working environment claim, Smith must prove that:

> (1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter

[7]Had Smith been able to establish a prima facie case, his claims would still fail on the issue of pretext because he never directly addresses Cleco's legitimate, nonretaliatory reasons for its conduct.

> the conditions of the victim's employment and create an abusive working environment.
>
> In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quotations and citations omitted). "[S]imple teasing, . . . offhand comments, and isolated incidents will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998). "The plaintiff bears the burden of showing that his employer failed to take effective action." Skidmore v. Precision Printing & Packaging, Inc., 188 F.3d 606, 616 (5th Cir. 1999).

In support of his hostile work environment claim, Smith states that he and other African-American employees were "subjected to a continuing pattern of a[sic] organized hostile work environment where African-Americans including Mr. Smith were denied promotional opportunities." Record Document 130, Memorandum in Opposition at 7. Most of his arguments and factual allegations that follow thereafter are either conclusory or irrelevant. Basically, his argument focuses on conduct by

Taylor and another Human Resources manager, John Melancon ("Melancon"); however, none of these allegations directly involve Smith. Instead, they are statements by other individuals claiming that Taylor and Melancon routinely made racist comments and that Taylor and Melancon would engage in discriminatory conduct against African-Americans. None of these allegations indicate that Smith was harassed by Taylor or Melancon, nor do they adequately explain how their conduct negatively impacted his work at Cleco. As a result, he has not presented any substantiated or relevant evidence that he was subjected to unwelcome harassment as required by the second element of his hostile work environment claim.

As for any other allegations found within Smith's opposition that could possibly be construed as relating to his hostile work environment claim, the court does not find that these allegations rise to the level of severe and pervasive harassment. Accordingly, Smith has failed to establish a prima facie case for hostile work environment, and, therefore, his claim must be dismissed.

## III. CONCLUSION

Based on the foregoing analysis, Cleco's second motion for summary judgment (Record Document 122) is **GRANTED**. The court finds there is no genuine dispute as to any material fact with regard to any of Smith's claims.

A judgment consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 22nd day of February, 2013.

JUDGE TOM STAGG